## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MICHAEL GAGLIARDI,** | ) |
| **Individually and in his capacity as a** | ) |
| **Member of the MERRIMACK VALLEY** | ) |
| **WORKFORCE INVESTMENT BOARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **C. A. No. 06-CA 10545 WGY** |
| **MICHAEL J. SULLIVAN,** | ) |
| **THE CITY OF LAWRENCE,** | ) |
| **MITT ROMNEY, as the Governor of the** | ) |
| **COMMONWEALTH OF MASSACHUSETTS,** | ) |
| **RANCH C. KIMBALL, as Secretary of the** | ) |
| **EXECUTIVE OFFICE OF ECONOMIC** | ) |
| **DEVELOPMENT, SUSAN V. LAWLER,** | ) |
| **Individually and as Commissioner of the** | ) |
| **MASSACHUSETTS and DIVISION OF** | ) |
| **CAREER SERVICES,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS BY DEFENDANTS
GOVERNOR ROMNEY, SECRETARY KIMBALL, AND SUSAN V. LAWLOR IN HER
<u>INDIVIDUAL AND OFFICIAL CAPACITY</u>**

Plaintiff Michael Gagliardi has brought this action on his own behalf, and putatively on

behalf of the Workforce Investment Board ("Board") against the Defendants: Mayor Michael J.

Sullivan of Lawrence ("Mayor"), Governor Mitt Romney ("Governor"), Secretary Ranch C.

Kimball ("Secretary"), and, in the case of Defendant Susan V. Lawler in her official

("Commissioner") and individual capacity.  Plaintiff was a member of the former Board, which

was disbanded by the Mayor allegedly with the "collusion" of the Governor, the Secretary, and

1

the Commissioner in her official and individual capacity.  Plaintiff's prolix complaint ends in

four counts: Count I is for declaratory judgment; Count II alleges a violation of Plaintiff's right

to free speech guaranteed under the First Amendment and Art. XVI of the Massachusetts

Declaration of Rights; Count III is entitled "42 U.S.C. 1983" and it asserts a violation of

Plaintiff's First Amendment rights as a Board Member; finally, Count IV is entitled "Injunctive

Relief."  Plaintiff demands declaratory relief, injunctive relief, compensatory damages,

attorney's fees, and punitive damages.

This Court should dismiss all counts against the Governor, the Secretary, and the

Commissioner in both her official and individual capacity.  The Governor, the Secretary, and the

Commissioner in her official capacity are not "persons" subject to suit within the meaning of 42

U.S.C. § 1983, and further, the Eleventh Amendment bars this suit seeking monetary damages

against them in federal court.  Thus, Counts II and III, do not lie against them.

And the equitable remedies counts, I and IV, do not lie against any of the Defendants, as

the Complaint fails to set out a violation of any constitutional right, and it fails to support any

request for equitable relief.

Nor do any of the counts lie against the Commissioner in her individual capacity, as the

Complaint fails to state a claim against her. Further, if any claim could be culled from the

Complaint's some 119 paragraphs, the Commissioner, in her individual capacity, would be

qualifiedly immune from it.

## I.  FACTUAL BACKGROUND[1]

---

[1]As this is a motion to dismiss, the Defendants Romney, Kimball, and Lawler, must
accept all well pleaded facts. Fed. R. Civ. P 12(b)(6).  However, the Defendants are not
compelled to accept: any allegations on information and belief in this unverified complaint.  Nor

<u>Who the Parties are</u>.

**The Board**

The Merrimack Valley Workforce Investment Board ("Board"),  was created under the Workforce Investment Act ("WIA"),  29 U.S.C. §§ 2801 - 2945, and was one of sixteen such Boards established throughout Massachusetts. Complaint ¶ 21  The WIA's  purpose was "to provide workforce investment activities, through statewide and local workforce investment systems, that increase the employment, retention, and earnings of participants, and increase occupational skill attainment by participants, and, as a result, improve the quality of the workforce, reduce welfare dependency, and enhance the productivity and competitiveness of the Nation."  29 U.S.C. § 2811 sec. 106.

This particular Board is a nonprofit Massachusetts corporation.  It represents fifteen communities including Lawrence, among others.  Complaint ¶ 20 The Board has thirty-seven members, who were appointed to serve three-year terms as directors of the corporation. Complaint ¶ 23  "The Board's fundamental responsibilities are to: (a) establish workforce development policy for the region; (b) set a budget for the expenditure of federal and state funds; and (c) oversee the operation of one-stop career centers in Lawrence and Haverhill." Complaint ¶ 22  The Mayor appointed the current Board on January 18, 2006.

**Michael Gagliardi**

The Plaintiff was a member of the former Board.  He was appointed to a three-year term by Mayor Sullivan.

---

are the Defendants compelled to accept any characterizations of the facts, or conclusions of law. *Legal Found. v. Massachusetts Bar Found.*, 993 F. 2d 971 (1st Cir. 1993). Finally, by filing this motion the Defendants do not admit to any of the facts alleged.

**Governor Mitt Romney**

The WIA requires that every two years each Board must be certified by the Governor. Complaint ¶¶ 38 & 39  Thus, the Governor is ultimately responsible for Board certification. Complaint ¶ 69

**Mayor Michael J. Sullivan**

The Mayor of Lawrence acted as the Board's Chief Executive Officer. 29 U.S.C. § 2832 sec. (1)(A).  Complaint ¶ 27  As such he entered into an agreement with the Board, which defined their respective roles: WIB-CEO Agreement. Complaint ¶ 35.

**Secretary Ranch C. Kimball**

Is the Secretary of the Executive Office of Economic Development Secretariat. Within this Secretariat is the Department of Career Services ("DCS").

**Commissioner Susan V. Lawler**

The Department of Career Services ("DCS") oversees Board certification.  Complaint ¶¶ 38 & 39  Further, DCS is a partner with the Boards in operating career centers in each region. These career centers are the "main mechanisms through which the local boards do their work." Complaint ¶ 42   Commissioner Lawler oversees certification at DCS.

What Constitutional Right Gagliardi Alleges.

Gagliardi claims a property interest in his apparently unpaid appointment to an uncertified Board.  He is claiming that by disbanding the Board, the Mayor violated his First Amendment right to freedom of speech.  Apparently, Gagliardi claims that the Mayor retaliated against the Board for its decisions on public concerns and for their attempts at "overseeing a city department, as they were required to do by federal law, and for refusing to cede their statutory

authority to the Mayor", Complaint p. 1, which resulted in his disbanding the Board, with the collusion of DCR.

Specifically,  in the Merrimack Valley the City (of Lawrence, assumedly) has a department, the Division of Training and Development ("DTD"), which works in partnership with DCS in operating the career centers. Complaint ¶ 43  The Mayor, through his designated representative, Attorney William DiAdamo, sought to retain DTD when the Board expressed reservations about DTD. Complaint ¶¶ 50, 55, 56, 72, & 83  The Board was particularly concerned that DTD would not approve raises for its staff. Complaint ¶ 58 DCS agreed with the Board that DTD should not be the fiscal agent for DTD, as well as for the Board's employees. Complaint ¶¶ 58 - 60

Further,  the Board was concerned about certain fiscal matters, and despite the Executive Director Jane Edmonds statement that the funds in question were legal and common, the Board was concerned about how the City and DTD, with the support of DCR handled grant monies. The Board set up a Fiscal Task Force, which identified a fund containing 1.1 million in unexpended grant monies, which the Mayor and DTD used without the Board's knowledge. Complaint ¶¶ 50, 51 & 52   The Mayor signed a new agreement fulfilling the Board's request that fiscal oversight be transferred to another City department, but the Mayor falsely represented what was in the agreement. Complaint ¶¶ 63 & 64

But the core of the Board's concern dealt with their certification status.  ¶¶ 61 & 62 Throughout 2005 the certification process for Gagliardi's Board was incomplete. Id.  DCS informed the Board that they required a completion of the transition of the Title I and staff employer functions before they could certify the Board.. Id.   The Board endeavored to produce

these documents, but it was stymied by the City's inability to produce the documents it possessed that were necessary for certification. Complaint ¶¶ 61 & 62.  Gagliardi and the Board's Chairman complained to the local newspaper about the Mayor not completing the certification tasks. Complaint ¶ 66   The Board and the Mayor reached an impasse concerning a new certification package that would give the Mayor additional powers, such as permitting the Mayor to fire Board members at will. Complaint ¶ 85  Ultimately, the Board was never certified.

And the Board's staff produced a report critical of DTD and DCS. Complaint ¶ 55  The report claimed that DCS retaliated when a local board demanded improvement or sought to change the local operator.  Complaint ¶ 44

What Actions Allegedly Violated Gagliardi's First Amendment Right to Free Speech.

The Mayor's disbanding of the Board allegedly violated Gagliardi's First Amendment right to free speech.  And DCS not certifying the Board after having certified it in 2000 and 2002 shows its "conspiracy" with the Mayor. Complaint p. 2 and ¶ 57

What The Governor, The Secretary, and The Commissioner Did.

The Governor is merely identified in the Complaint, he is not alleged to have committed any act.  And the Complaint fails to allege anything that the Secretary did.  The only mention of the Secretary is when Attorney DiAdamo threatened that he would have the Secretary and his subordinates decertify the Board.  Complaint ¶¶ 82 - 84

As for Commissioner Lawler the allegations against her are based on the Board's not achieving certification, her letter instructing the Board, and questions about one of her subordinates.  Specifically, Barbara Zeimetz, a top DCS policy analyst and friend of Arthur Chilingirian, was one of two people who interviewed, and recommended him for the position of

executive director of DTD.  Mr. Chilingirian was employed in the state bureaucracy and has had

longstanding relationships with DCS and DWD [sic] employees.  Complaint ¶¶ 47 & 48

Zeimetz reports directly to Lawler. And Zeimetz and Lawler have "been intimately involved in

the actions of DCS that are the subject of this Complaint." Complaint ¶ 49

  This "intimate involvement" includes the Commissioner corresponding with the Board

concerning its certification. In her letter of October 21, 2005 the Commissioner directed the

uncertified Board not to discuss anything except issues relating to certification. Complaint ¶

71.[Exhibit A] In that same letter she informed the Board, "[W]e will only accept further

submissions of requested documents and information relating to outstanding compliance issues

from Attorney DiAdamo as requested by the Chief Elected Official for the area." Complaint ¶ 76

[Exhibit A p. 2]

  As for the Board's certification documents, DCS found no fault with the usual

documents, including the WIB-CEO Agreement, but it would not fully certify the Board until the

Mayor had actually completed the transition of the Title I administrator and staff employer

functions.  Only the CEO could make this change, and the Mayor did not do it. Complaint ¶¶ 61

& 62.  Throughout 2005 the certification process was incomplete. Id.

  The City ultimately admitted that the Board had compiled all of the documents it could

that were necessary for certification.  And the City noted, that certification could not be

completed as "there are a few items that remain which are dependent on City of Lawrence

decisions."   Complaint ¶ 65

   In the Fall of 2005, the Mayor told Commissioner Lawler that he would seek to disband

the Board after the November election.  Complaint ¶¶ 67, 68 & 70

The Mayor set up a meeting with DCS, to take place after the election, at which his designated representative, Attorney DiAdamo, would present the final certification documents. The day before this meeting Attorney DiAdamo and his father met with the Board's chairman and ordered him to approve the new documents the Mayor proposed.  The Chairman indicated that the Attorney's demand was inconsistent with the WIA.  In response, Attorney DiAdamo shouted, "I don't give a s__t about workforce development.  The package that goes in has got to include that." Complaint ¶ 82  The Chairman would not agree to the provision that would allow the Mayor to fire the Board and staff members at will.  The Chairman was not invited to attend the Mayor's meeting with DCS.  After the meeting the Mayor announced that he had disbanded the Board because it had not submitted a complete certification package. ¶¶ 85 - 88.  The Mayor also stated that the Board had to be dissolved because conflicts among its members prevented it from operating effectively.  But the Board's dispute was with the Mayor. Complaint ¶ 89

Later, Commissioner Lawler took the position that the Board had to be disbanded because its members had not voted on the certification package the Attorney proposed to submit.  DCS had not required a vote on the two previous certification packages. Complaint ¶ 90

The Mayor appointed a new Board on January 18, 2006 ("Current Board").  The Current Board has met [2] and in its second meeting unanimously approved the certification documents. Complaint ¶ 104  These documents have provisions rejected by the previous Board's chairman. Complaint ¶ 105.  The Current Board's certification request was to be acted upon by March 15th. Complaint ¶ 107

---

[2]Plaintiff alleges the meetings were in violation of the State's Open Meeting Law G.L. c. 39, § 23B. Complaint ¶¶ 98 - 103

## II.  ARGUMENT

Fed. R. Civ. P. 12 (b)(6) and Fed. R. Civ. P. 12 (c) authorize dismissal of a complaint for

failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12 (b) (1) authorizes

dismissal of a complaint if the court lacks subject matter jurisdiction over the claims.  A Federal

court must assure its jurisdiction over the claims before reaching the merits.  *Bell v. Hood*, 327

U.S. 678, 682 (1946).  Under Fed. R. Civ. P. 12 (b)(1), the party invoking jurisdiction has the

burden of proof to establish its existence.  *Murphy v. U.S.*, 45 F. 3d 520, 522 (1st Cir. 1995).  A

Federal Court must dismiss an action whenever it appears that subject matter jurisdiction is

lacking by reason of sovereign immunity under Fed. R. Civ. P. 12 (b)(1). Id.

    A.    <u>Gagliardi's Federal Causes of Action Against the Governor, the Secretary, and the Commissioner in Her Official Capacity Are Barred By the Eleventh Amendment</u>.

    1.    Federal civil rights damage claims are barred by sovereign immunity.

Putting the Declaratory Judgment and Injunctive Relief Counts (Counts I and IV

 respectively) aside,  in Count II Gagliardi is suing the Governor, the Secretary and

the Commissioner in her official capacity for violations of his First Amendment right to free

speech. And in Count III Gagliardi is suing for what appears to be a statutory free speech claim

brought under 42 U.S.C. § 1983  Each count must fail, for the Plaintiff has no right to sue the

Governor, the Secretary, or the Commissioner in her official capacity in Federal Court for these

allegations.

The Eleventh Amendment bars such claims.  As the Court of Appeals has definitively

stated:

> the Eleventh Amendment has always acted to restrict
> the jurisdiction of the federal courts to entertain claims

> against the state when the underlying source of federal
> jurisdiction is diversity jurisdiction. The Amendment
> also restricts the jurisdiction of the federal courts to hear
> private claims based on federal causes of action
> created by the Congress, <u>see Edelman v. Jordan</u>, 415 U.S.
> 651, 662-64 (1974), subject to the <u>Ex Parte Young</u>
> exception for injunctions against state officers. <u>Ex Parte
> Young</u>, 209 U.S. 123, 159 (1908).

*Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and the Carribean Cardiovascular Center Corp*., 322 F. 3d 56, 63 (1st Cir. 2003).

As their titles indicate, the Governor, the Secretary, and the Commissioner in her official capacity are arms of the state. Thus, unless Congress has overridden the State's Eleventh Amendment Immunity or unless the State has consented to suit these Defendants as officials of the State are protected by the Eleventh Amendment bar from suits for money damages in federal court. *Will v. Michigan Dep't of State Police*, 485 U.S. 1005 (1989); *Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F. 2d 935, 939 (1st Cir. 1993). Thus, Plaintiff's request for money damages under Counts II and III must be dismissed.

Further, Counts II and III cannot survive for they allege civil rights violations against state officials, and  officials acting in their official capacity are not "persons" subject to suit under the Federal Civil Rights Act, 42 U.S.C. § 1983.  It is well established that:

> "[u]nder the Sovereign Immunity Clause of the Eleventh Amendment,
> a state, its agencies, and agency officials acting in their official capacities
> are not "persons" subject to suit under section 1983 for money damages,
> either in state or federal court.

*Cronin v. Commonwealth*, No. Civ. A. 03-11749-RGS, slip op. at 1 (D.Mass. Feb. 5, 2004), citing *Will v. Michigan Dep't of State Police*, 491 U.s. 58 (1989); *Johnson v. Rodriguez,* 943 F. 2d 935*, 939 (1989);Woodbridge v. Worcester State Hospital*, 384 Mass. 38, 44-45 & n. 7 (1981).

10

Although Plaintiff does not identify a state a claim under the Massachusetts Civil Rights Act, G.L. c. 12, § 11I, he does employ some of the language of that statute in Count III ("The Mayor acted by threats, intimidation, and coercion... .")  But, this claim (if it exists) must fail just as the Federal Civil Rights Act claim failed.  As in its federal corollary, the state civil rights statute does not recognize the state or its officials as parties subject to suit under the Statute. *Commonwealth v. Elm Med. Labs., Inc*. 33 Mass. App. Ct. 71, 76 (1992).

In his prayer for relief, Plaintiff demands compensatory damages under Count II.  As argued above, this claim fails against the Governor, the Secretary, and the Commissioner in her official capacity.  For Count III, the Plaintiff demands punitive damages, costs, and attorney's fees.  It is clear that the State and its officials acting in their official capacity are not liable for punitive damages, and thus this request must be dismissed.  And, as the state and its officials are not susceptible to suit under the Federal Civil Rights Act, any claim for costs and attorney's fees must be dismissed as well.

2.      Counts I and IV For Declaratory and Injunctive Relief Should Be Dismissed

a)  Gagliardi has no authority to represent the Board, and any claims on its behalf should be dismissed.

Gagliardi claims to represent himself and the Board.  Any claims against the Defendants on behalf of the Board should be dismissed as Gagliardi lacks standing to represent the Board. To achieve representational standing for the Board Gagliardi was required to show that it is difficult or impossible for the actual right holders to assert their claim.  *Slama v. Attorney General*, 384 Mass. 620, 624 (1981).  Gagliardi shows no such thing.  Indeed, although he claims relief for the Board members throughout his complaint, Complaint p. 2 & Prayer for Relief (2),  Gagliardi undercuts his argument that he represents the Board by stating that he does

not know whether they would choose to be plaintiffs voluntarily or involuntarily.  Complaint ¶ 19.  His own averments belie his assertion that he represents the Board.

Further, the Board is an incorporated entity.  Complaint ¶ 20 .  Nowhere in the very detailed recitation of facts and allegations in the Complaint does Gagliardi state that the Board, at any time, voted to have him represent their interests.  Thus, any claims on behalf of the Board should be dismissed.

> b).  Gagliardi has no standing to bring these claims on his own behalf.

In *Lujan v. Defenders of Wildlife* the Supreme Court set out  the three-part "irreducible constitutional minimum of standing as follows:

> First, the plaintiff must have suffered "an injury in fact"- an invasion of
> a legally protected interest which (a) concrete and particularized, and
> (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second,
> there must be a causal connection between the injury and the conduct
> complained of - the injury has to be fairly trace[able] to the challenged
> action of the defendant ... ."  Third, it must be "likely," as opposed to
> merely "speculative," that the injury will be "redressed by a favorable
> decision. "

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Gagliardi claims that he has a First Amendment right to free speech, which was violated when the Mayor, with the collusion of the DCS, disbanded the Board.  Gagliardi further claims that he has a property interest in what appears to be an unpaid position on the non-certified Board.  Indeed, Gagliardi, among millions, has a First Amendment right to freedom of speech. This claim alone will not satisfy standing requirements.  And his claim that the disbanding of a non-certified Board by an executive statutorily empowered to do so, does not state a violation of his constitutional rights. 29 U.S.C. § 2832 (1)(A) & 29 U.S.C. § 2832 (2)(C).  Further, his allegations that DCS was somehow colluding with the Mayor is not borne out by Gagliardi's

own facts.  The Lawler letter merely states that the Board was required to finish its

documentation for certification.  Lawler details the protracted certification process, and  the

Board's failure to comply with it, as well as other compliance issues. [Exhibit A, p.1 ]

Gagliardi's gloss on the letter is not entitled to any deference as the letter speaks for itself. And,

as can be seen by the text of the letter,  Gagliardi's allegations against DCS are, at best,

unfounded conclusions.  *See Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev*., 421 F. 3d 1,

9 (1st Cir. 2005)(holding unsupported conclusory allegations insufficient to withstand Rule

12(b)(6)  motion to dismiss).

      And, noteworthy by its absence, are any statements attributed to Gagliardi. It is difficult

to determine just what right to free speech was violated.  Thus, Gagliardi fails to demonstrate

that he has suffered an invasion of a "concrete and particularized" legally protected interest.

      Further, the Complaint fails to plead that such invasion is "actual or imminent" and not

conjectural.  There is no imminent danger here, Gagliardi is making a claim for a past alleged

wrong: the disbanding of the Board.  Gagliardi has a different burden to qualify for equitable

relief:  he is required to show the absence of an adequate remedy at law; and that the danger is

imminent.  Even if he were successful in establishing a damages claim, this does not equate with

satisfying the requirements for an equitable claim.  *City of Los Angeles v. Lyons*, 461 U.S. 95,

103 (1983).  And, Gagliardi fails another requirement for equitable relief: his  harm results from

the disbanding of the Board in 2005; as this is a past harm,  he fails in his burden for qualifying

for injunctive or declaratory relief.  *Id.*

      Further, Gagliardi was required to show that the conduct complained of was fairly

traceable to the defendants' challenged actions.  This he cannot do as there is no claim the

Governor acted in any fashion, particularly not in a constitutionally suspect fashion.  In fact, Gagliardi merely mentions that the Governor has the ultimate responsibility for Board certification.  Complaint ¶ 69   Further, the only references to Secretary Kimball show that his name was used as a possible threat by others, it is not alleged that he, himself, did anything.

And the references to Commissioner Lawler, while more numerous, add up to nothing. Apart from describing her as a party, Commissioner Lawler is not mentioned until paragraph 49 of the Complaint, "A top DCS policy analyst, Barbara Zeimetz, was one of two people who interviewed and recommended Chilingirian to be the executive director of DTD.  Zeimetz is a friend of Chilingirian, and reports directly to Lawler. Zeimetz and Lawler have been intimately involved in the actions of DCS that are the subject of this Complaint."  Thus, Commissioner Lawler is guilty of having a subordinate who reports to her.  As for being intimately involved in any actions here, Gagliardi was required to demonstrate such intimate involvement.  Instead, he merely speculates.

For example, Secretary Kimball is first mentioned, along with Commissioner Lawler, in paragraph 68 where Gagliardi opines: "[ ] Sullivan *may well have* had the power to cause Romney, Kimball, Lawler, and other state officials to support his brother's unlawful dismissal of the Board." [emphasis supplied]  This allegation is frivolous, and should be stricken.  It clearly does not provide support for any alleged injury. Secretary Kimball appears again where Gagliardi alleges that Attorney DiAdamo stated that he had "powerful allies in Defendant Ranch Kimball's office, who would decertify the Board on a moment's notice."  DiAdamo apparently further threatened that Kimball and his subordinates would cause the Board to be decertified. Again, the Secretary is not responsible when someone uses his name in a threat or a musing.

14

These "facts" fail to support any claim for equitable relief against the Secretary.

Apart from Gagliardi's speculations, there exists certain letters which speak to the facts involved in this case.  Specifically, Mayor Sullivan wrote to Commissioner Lawler to inform her that he intended to disband the Board immediately after the November election.  A letter from Commissioner Lawler to the uncertified Board instructed them that they should only discuss matters relating to certification.  In this same letter, she advised the Board that based upon the Mayor, the Board's Chief Executive's representations regarding the certification process, " [DCS] will only accept further submissions of requested documents and information relating to outstanding compliance issues from Attorney DiAdamo as requested by the Chief Elected Official for the area."  Later on, Commissioner Lawler "took the position that the Board had to be disbanded because its members had not voted on the certification package DiAdamo proposed to submit..." Complaint ¶ 90.

Gagliardi had to plead that certain actions of the Defendants could be traceable to the harms he claims to have suffered.   As argued above, Gagliardi fails to trace any harms to any acts by the Governor or the Secretary.

As for Commissioner Lawler, the allegations amount to nothing more than what is contained in her letter.  And the letter speaks for itself: it merely instructs the non-certified Board on matters of certification.  Gagliardi's further musings regarding her "intimate" involvement in these matters is belied by the facts alleged in his complaint, for if she was so intimately involved as he characterizes, than he should be able to allege more than the fact that she has a subordinate who reported to her, and that she received a letter from the Chief Executive of the Board and that she wrote a letter to the Board.  In any event, the act complained of is the disbanding of the

15

Board, the Complaint establishes that neither the Governor, nor the Secretary, nor the

Commissioner disbanded the Board.  Gagliardi's characterizations that DCR colluded or

conspired with the Mayor are not supported by his facts, and they fail to support his burden here.

*See Watterson v. Page*, 987 F. 2d 1, 9 n. 7 (1993)(characterizing the acts as a conspiracy adds

nothing to the charge: mere conclusory allegations that the defendants conspired are not enough

in a civil rights complaint to turn otherwise lawful actions in to a claims of unlawful conspiracy).

Gagliardi has failed to present a justiciable claim, and thus, lacks the standing to sue

these Defendants on his own behalf, as well as on behalf of the Board.  So, the remaining Counts

against the Officials (Governor, Secretary, and Commissioner in her official capacity), Count I

for Declaratory Judgment and Count IV for Injunctive Relief should be dismissed.  And, for the

same reasons that Counts I and IV should be dismissed against the Officials, these same counts

should be dismissed against Commissioner Lawler in her individual capacity, as this capacity

does not preclude her from the same analysis that supports the dismissal of the official capacity

suits for these particular counts.

### B.  As Gagliardi  Failed To Set Forth a Federal Cause of Action, All Counts  Leveled Against All Defendants Should be Dismissed**.**

As argued above, the Eleventh Amendment and the definition of a party under 42 U.S.C.

§ 1983, presented the Officials with an insurmountable defense to Counts II and III.  Further,

Gagliardi's failure to establish a federal cause of action, should result in the dismissal of all

Counts leveled against all Defendants. And this is particularly true in Counts I and IV, as, in

addition to failing to establish a federal cause of action, he failed to meet the requirements for

equitable relief.  Under 42 U.S.C. § 1983, a plaintiff must show that: (1) the conduct complained

of was committed by a person acting under color of state law; and (2) the conduct deprived a

16

person of clearly established rights, privileges or immunities secured by the Constitution or laws of the United States. *Collins v. Nuzzo*, 24 F. 3d 246, 250 (1st Cir. 2001); *Soto v. Flores*, 103 F. 2d 1056, 1061 - 1062 (1st Cir. 1997). Even if it is conceded that Defendants were acting under color of state law, Gagliardi cannot meet the second requirement, showing that clearly established federal rights were implicated.

Gagliardi's complaint hardly identifies the specific rights, privileges, or immunities secured by the federal Constitution or any laws of the United States of which he has been deprived. He alleges that he has a property interest, but this property interest is to an unpaid, uncertified WIA regional Board. And he alleges that this property interest was violated when the Mayor disbanded the former Board.

To survive a motion to dismiss, allegations "must be backed up with enough supporting facts to outline the elements of the pleader's claim." *Hurney v. Carver*, 602 F. 2d 993, 995 (1st Cir. 1979)(citations omitted). A court need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa-Martinez v. Arrillage- Belendez*, 903 F. 2d 49, 51 (1st Cir. 1990). Rule 12(b)(6) is not entirely a "toothless tiger," *Dartmouth Review v. Dartmouth College*, 889 F. 2d 13, 16 (1st Cir. 1989). As argued above, Gagliardi's allegations against the Governor, the Secretary, and the Commissioner in both her official and individual capacity do not suffice to support a federal civil rights claim against them. *Contrast Mihos v. Swift*, 358 F.3d 91 (1st Cir. 2004)(in a 1983 claim alleging a First Amendment violation the Plaintiff properly alleged the elements necessary for his claim: he tied, and for the purposes of the motion, the Defendant admitted , that the act of firing the employee was related to his vote on a specific issue)

However, if the Court determines that the complaint sufficiently states a section 1983 claim then Lawler, now in her individual capacity,  is entitled to dismissal as she is qualifiedly immune from suit.

C.    Commissioner Lawler Is Entitled to Qualified Immunity.

The qualified immunity doctrine provides a tool to the court to eliminate unfounded lawsuits. *Souza v. Pina*, 53 F 3d. 423, 425 (1st Cir. 1995)  "Qualified immunity shields state officials exercising discretionary authority from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Souza* at 425 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity doctrine exists to protect state officials from "undue interference with their duties and from potentially disabling threats of liability." *Harlow* at 806.

The courts perform a three-part inquiry to determine whether an individual is entitled to qualified immunity.  The first question requires resolving whether the plaintiffs have alleged a violation of a federal constitutional or statutory right.  And, if they have, whether this right was clearly established at the time of the alleged violation.  *Hatch v. Department for Children, Youth and Their Families*, 274 F. 3d 12, 20 (2001).  The last inquiry requires determining whether an objectively reasonable official would have believed their acts violated constitutional or federal rights.  *Starlight Sugar, Inc. v. Soto*, 253 F. 3d 137, 141 (1st Cir. 2001).  Further, the doctrine of qualified immunity provides protection for an individual's mistaken judgments.  *See Malley v. Briggs*, 475 U.S. 335, 341 (1986)(qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law").

As demonstrated above, not only does Gagliardi fail to demonstrate that the

Commissioner violated a clearly established right, he fails to establish, as he must, that any such clearly established right exists at all. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *See Wilson v. Layne*, 526 U.S. 603, 608 - 609 (1999). The complaint must set forth the right with particularity. *See, e.g., Frazier* at 930. Without such particularity there would be no way to apply the objective standard for qualified immunity: any reasonable individual would have no way of knowing they were going to violate the right unless they had reasonable notice as to just what the right was. *Anderson v. Creighton*, 483 U. S. 635, 639 (1987). And the notice must have existed at the time the alleged right was violated. *See, e.g., Bailey*, at 929.

Really, the sum total of Gagliardi's allegations against the Commissioner are set out in her letter. And, in essence, it is this letter that Gagliardi alleges constitutes a constitutional tort by the Commissioner. But, on its face, the Commissioner's letter does nothing more than inform an uncertified Board of the requirements for certification, and other compliance issues related to the Board. This, alone, entitles the Commissioner to qualified immunity. If further inquiry was required, the Commissioner would still be entitled to qualified immunity as the dearth of any case law establishing the alleged rights illustrates that the Commissioner could not have violated a clearly established right. *Anderson* at 641. The Commissioner received a letter from the Mayor which identified problems he was having with the Board, and she wrote a letter to the Board detailing the outstanding certification requirements. The Commissioner did not receive "fair warning" that these activities could be considered unconstitutional, and thus, she should refrain from them. *See U.S. v. Lanier*, 117 S. Ct. 1219 (1997)(in a case involving the criminal counterpart to section 1983, the Court stated the concept of "fair warning" for the defendant).

Further, the Commissioner could not have known that by corresponding with the Board

19

concerning its incomplete certification status, that she violated Gagliardi's clearly established right, as no such right exists. Thus, no reasonable individual in the Commissioner's position would have known she was violating any clearly established federal constitutional or statutory right. *Rodriguez Rodriguez v. Munoz Munoz*, 808 F. 2d 138, 142 (1st Cir 1986).

The Commissioner is entitled to qualified immunity, and as this immunity is from suit, all counts leveled against her (Counts I through IV) should be dismissed. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), *Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664, 667 (1st Cir. 1996).

## CONCLUSION

For the foregoing reasons the court should grant the Defendants' motion to dismiss all counts leveled against Governor Romney, Secretary Kimball, and Commissioner Lawler in her official and individual capacity.

COMMONWEALTH OF MASSACHUSETTS
By its Attorneys

THOMAS F. REILLY
ATTORNEY GENERAL


_____/s/ Mary O'Neil_____
Mary O'Neil, BBO # 379430
Assistant Attorney General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA 02108
(617) 727-2200, Ext. 2636

Date: September 1, 2006

20

**<u>Certificate of Service</u>**

       I Mary O'Neil, hereby certify that this document filed through the ECF system on September 1, 2006 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                      /s/ Mary O'Neil